UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MATTHEW C. H.,

                          Plaintiff,

     v.                                          3:20-CV-314 (CFH)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

---

**APPEARANCES:**                         **OF COUNSEL:**

Dennis Kenny Law                      JOSEPHINE GOTTESMAN, ESQ.
288 North Plank Road
Newburgh, New York 12550
Attorneys for plaintiff

Social Security Administration         JAMES J. NAGELBERG, ESQ.
J.F.K. Federal Building, Rm. 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION & ORDER

    Plaintiff Matthew C. H.[1] brings this action pursuant to 42 U.S.C. § 405(g) seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner," "SSA," or "defendant") denying his application for disability insurance

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

benefits and supplemental security income. See Dkt. No. 1. ("Compl.").[2]  Plaintiff moves for a finding of disability, and the Commissioner cross moves for judgment on the pleadings.  See Dkt. Nos. 12, 13.  For the following reasons, the determination of the Commissioner is reversed, and this matter is remanded to the Commissioner for proceedings consistent with the Court's analysis and directives set forth herein.

## I.  Background

On January 24, 2017, plaintiff protectively filed a Title II application for disability and disability insurance benefits as well as a Title XVI application for supplemental security income.  T 157-64.[3]  Plaintiff alleged disability beginning on September 12, 2016.  The applications were denied on April 12, 2017.  See id. at 90.  Plaintiff filed a written request for a hearing.  See id. at 100.  On September 25, 2018, a hearing was held before Administrative Law Judge ("ALJ") Andrew J. Soltes, Jr., where plaintiff was represented by counsel.  See id. at 25-64.  On February 1, 2019, the ALJ issued a decision denying plaintiff's application.  See id. at 10-17.  The Appeals Council denied plaintiff's timely request for review, making the ALJ's decision the final determination of the Commissioner.  See id. at 1-3.  Plaintiff commenced this action on March 19, 2020. See Compl.

---

[2] The parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636 (c), Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 73, N.D.N.Y. Local Rule 72.2 (b), and General Order 18. See Dkt. No. 8.

[3] The Court will cite the administrative transcript as "T [page number]."  The Court will cite the pagination that appears in the bottom right-hand corner of the administrative transcript.  Citations to the parties' submissions, however, will be to the pagination generated by the Court's filing system, located at the header of each page.

Plaintiff was born in June 1991 and was 27 years old at the time of the hearing. T at 31.  He completed the twelfth grade.  See id. at 37.  Plaintiff has three children, aged 10 months, 2 years, and 8 years at the time of the hearing.  See id. at 32.  Plaintiff has past work as a contractor, auto mechanic, and landscaper/hardscaper.  See id. at 37-41.  Plaintiff last worked in September 2016, after he was involved in a motor vehicle accident.  See id. at 31.  Plaintiff attempted to work in January 2018 driving a truck.  Id. at 33.  Plaintiff resumed work for one to two months, stopping because he could not sit for the eight to ten hours a day required by the job.  See id. at 33, 35.

## II. Standards of Review

### A.  Substantial Evidence Standard

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder

would *have to conclude otherwise.*" Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is

4

"based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial

burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since September 12, 2016, the alleged disability onset date.  See T at 11.  At step two, the ALJ found that plaintiff had the following severe impairments: compression fracture and multilevel degenerative disc disease with canal narrowing, status-post surgery, after a motor vehicle accident. See id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 13.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he requires a sit/stand option at will but must remain on task during the sit/stand period.  He can perform occasional stooping and crouching. He can perform no kneeling or crawling.  He can occasionally climb ramps and stairs.  He cannot climb ladders, ropes, or scaffolds.  He cannot work around unprotected heights.  He can occasionally use left lower extremity food controls.  He must avoid extreme temperatures.

Id. at 18.

At step four, the ALJ determined that plaintiff could not perform any past relevant work.  See T at 16.  At step five, considering plaintiff's age, education, work experience,

and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. See id. at 16-17. Thus, the ALJ determined that plaintiff had not been under a disability, as defined in the Social Security Act, since the alleged disability onset date. See id. at 17.

## IV.  Arguments

Plaintiff argues that the ALJ (1) erroneously concluded that plaintiff did not meet or medically equal listing 1.04; (2) reached an RFC unsupported by substantial evidence; and (3) failed to meet his burden to develop the record. See generally dkt. no. 12. More specifically, as to his listing argument, plaintiff contends that the evidence demonstrates that plaintiff met or medically equaled listing 1.04, pointing to records showing decreased lumbar spine range of motion, tenderness and pain, multilevel degenerative disc disease, osteoarthritic changes, loss of range of motion in the lumbar spine, decreased sensation, degenerative changes, positive straight leg raise on left, antalgic gait, muscle spasm in the back, and reduced lumbar spine flexion and extension. See id. at 17-18. As for substantial evidence, plaintiff contends that the ALJ cherry picked, "choosing snippets of various examinations and discarding those that would detract from his decision of no disability." Id. at 19. Plaintiff contends that the evidence does not support a conclusion that plaintiff could perform sedentary work, and plaintiff's credible hearing testimony supports otherwise. See id. at 20. Finally, plaintiff argues that, despite being represented by counsel, the ALJ had a duty to develop the record by seeking opinions from plaintiff's treating sources and arranging a consultative

7

examination because the only opinion in the record is from a non-examining state agency medical consultant. See id. at 21.

Defendant argues that (1) substantial evidence supports the ALJ's decision that plaintiff did not meet or medically equal Listing 1.04(A), (2) substantial evidence supports the ALJ's RFC, (3) the ALJ acted within in his discretion in declining to seek out medical source statements from plaintiff's treating providers or a consultative examination, and (4) substantial evidence supports the ALJ's step five determination that jobs that plaintiff can perform exist in significant numbers in the national economy. See Dkt. No. 13.

## V.  Discussion

Plaintiff alleges that he meets or medically equals listing 1.04, and that the ALJ's conclusion otherwise means that the ALJ "either did not read the medical records or dismissed out of hand the persistent evidence of meeting such a  listing." Dkt. No. 12 at 18.  Defendant asserts that substantial evidence supports the ALJ's determination that plaintiff does not meet or medically equal Listing 1.04 because (1) "the ALJ's decision, when read as a whole, points to substantial evidence that Plaintiff did not meet or equal a listing because of an absence of evidence of motor loss," and (2) the ALJ explicitly noted that there was a lack of medical evidence establishing nerve root compression. Dkt. No. 13 at 6.

The Commissioner publishes a series of listed impairments describing physical and mental conditions, indexed according to the body system affected.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). Listed impairments are presumptively

disabling. See 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).  "The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing." Henry v. Astrue, 32 F. Supp. 3d 170, 182 (N.D.N.Y. 2012) (citing Naegele v. Barnhart, 433 F.Supp.2d 319, 324 (W.D.N.Y.2006)).

   To meet listing 1.04(A), a claimant must demonstrate "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04(A).  "Where, as here, a claimant alleges that he meets Listing 1.04(A) based on a lower back injury, disorder, or condition, he must meet all five criteria included in that listing." Monsoori v. Comm'r of Soc. Sec., No. 1:17-CV-01161-MAT, 2019 WL 2361486, at *4 (W.D.N.Y. June 4, 2019).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 531 (1990).  Any abnormal physical findings 'must be shown to persist on repeated examinations despite therapy.'" Beall v. Colvin, No. 5:16-CV-92, 2017 WL 1155809, at *3 (N.D.N.Y. Mar. 27, 2017) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)); Beach v. Comm'r of Soc. Sec., No. 7:13-CV-323 GLS, 2014 WL 859167, at *3 (N.D.N.Y. Mar. 5, 2014) (citing Evans v. Astrue, No. 12-CV-6002, 2012 WL 6204219, at *3-4) (W.D.N.Y. Dec. 12, 2012) ("In fact, in order to qualify for listing severity, the claimant must show that he meets all the requirements of the listing consistently.")). "Furthermore, the medical reports should reflect physical limitations based upon actual

9

observations and not just the claimant's subjective complaints." Beall, 2017 WL 1155809, at *3 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)).

"To make a showing of medical equivalence to a listed impairment, the claimant must present medical findings equal in severity to all requirements, which are supported by medically acceptable clinical and laboratory diagnostic techniques." Id.u at *3 (citing 20 C.F.R. § 404.1526(b)).  Moreover, "[f]or a claimant to qualify for benefits by showing that his [or her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he [or she] must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Sullivan, 493 U.S. at 531.  "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his [or her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." Id.; see also Evans v. Astrue, No. 12-CV-6002, 2012 WL 6204219, at *3-4 (W.D.N.Y. Dec. 12, 2012) ("In fact, in order to qualify for listing severity, the claimant must show that he meets all the requirements of the listing consistently.").

Consultative examinations assessing back disorders generally "assess all of the components necessary to meet Listing 1.04(A), namely, distribution of pain, limited range of motion, motor loss, reflex or sensory loss, and straight leg raising tests, in addition to reviewing or ordering diagnostic testing, if appropriate, which would show the compromise of a nerve root or evidence of nerve root compression." Monsoori, 2019 WL 2361486, at *5.  The Court notes that there is no consultative examination in the record; however, such an absence need not be erroneous where the "medical records

appear to contain references to all of the separate components necessary to meet the Listings[.]" Id.

Here, the ALJ concluded that plaintiff did not meet Listing 1.04(A) because the evidence did not establish nerve root compression.[4]  See T at 13.  He further noted that there was a lack of medical evidence showing that plaintiff's back problems led to his being unable to effectively ambulate as defined by 1.00(B)(2)(b).  See id.  Although not in the section of the decision that discussed the listings, the ALJ did perform a fairly detailed review of many of plaintiff's medical treatment records.  Following his RFC assessment, the ALJ noted that plaintiff appeared at the emergency room three days following his motor vehicle accident, complaining of pain radiating into his lower left extremity.  See T at 15. The X-ray showed "a mild L1 compression deformity, multilevel degenerative disc disease, and straightening of the normal lumbar lordosis." Id. at 14 (citing Exh. 1F at 5).  The ALJ pointed to the fact that plaintiff's cervical spine X-ray from the emergency room showed "normal results."  Id.  Next, the ALJ noted an October 17, 2016, MRI which

> confirmed multilevel disc degenerative and osteoarthritic changes, and left para-central disc extrusion with mass effect on the descending left S1 nerve root, narrowing of the lateral recesses bilaterally, mild canal narrowing at L2-3 and L3-4, moderate canal narrowing at L4-5 and L5-S1, and moderate bilateral neural foraminal narrowing at L4-5 and L5-S1.

Id. (citing Exh. 1F at 42).  The ALJ also reviewed plaintiff's post-surgical complaints and records.  Id.  The ALJ observed plaintiff's complaint "of some back pain with pain

---

[4]  Defendant points out that the ALJ also concluded that plaintiff did not meet or demonstrate medical equivalence for listing 1.04(B) (spinal arachnoiditis) or listing 1.04(C) (lumbar spinal stenosis), but that because plaintiff did not challenge those findings in his brief he waived those arguments. See Dkt. No. 13 at 6.  The Court agrees.  Although the heading of plaintiff's brief generally states that plaintiff met or medically equaled the "listings at § 1.04," he directly cites only subsection A, discussing nerve root compression and reviews only the requirements of Listing 1.04(A). See Dkt. No. 12 at 16.  Thus, the Court will address only plaintiff's arguments as it relates to Listing 1.04(A).

radiating down his left leg" with "lessened" numbness and left leg pain. Id. He points to a January 6, 2017, examination where plaintiff had "normal muscle tone and a [sic] full strength in the lower extremities," with normal reflexes, negative Babinski's reflex, absent Hoffman's sign, intact coordination, intact sensation to light touch and pinprick, and normal gait and station. Id. The ALJ noted that "similar results" were observed on January 13, 217, except with decreased sensation to pinprick over the left S1 distribution. Id. Next, the ALJ noted that a January 2, 2017, MRI

> showed straightening of the lumbar spine, multilevel degenerative changes, evidence of a left-sided laminotomy at L5-S1 with central/left para-central soft tissue that is incompletely evaluated, narrowing of the lateral recess, moderate canal narrowing, mild-to-moderate bilateral neural foraminal narrowing, fluid signal along the laminotomy defect, moderate canal narrowing at L4-5 and L5-S1, and mild canal narrowing at L3-4 and L2-3.

Id. at 15.

However, in setting forth this review, the ALJ did not address records that suggest evidence of nerve root impingement. Thus, it is unclear to the undersigned whether or to what extent these records impacted the ALJ's conclusion that the medical evidence did not establish nerve root compression. Defendant cites SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017) to argue that "the [ALJ] is not required to articulate specific evidence supporting his or her finding that the [claimant's] impairment(s) does not medically equal a listed impairment[,]" and that ALJ's "articulation of the reason(s) why the [claimant] is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or the court to determine the basis for the finding about medical equivalence at step 3." Dkt. No. 14 at 5-6 (quoting SSR 17-2p).

12

The Court observes that "much of [plaintiff's] argument is a recitation of the evidence of record rather than an application of those facts to the listings[,]" White v. Comm'r of Soc. Sec., No. 8:17-CV-0109 (DJS), 2018 WL 2170288, at *6 (N.D.N.Y. May 10, 2018), aff'd sub nom. White v. Berryhill, 753 F. App'x 80 (2d Cir. 2019) (summary order); however, even with this limitation, plaintiff does highlight medical records demonstrating potential existence of symptoms that supports a finding that plaintiff may meet or medically equal Listing 1.04(A), including evidence of nerve root compression. Plaintiff points to a January 10, 2017, lumbar spine MRI showing "impingement of bilateral S1 nerve roots." Dkt. No. 17 at 17 (citing T at 389); see also T at 389 (noting disc contacts nerve root). As the ALJ concluded that plaintiff did not meet Listing 1.04 because of a lack of evidence of nerve root compression, it is concerning to this Court that there exist medical records that appear to show such nerve root compression. Although, noted above, defendant points out that Social Security Ruling ("SSR") 17-2p advises that the ALJ need not articulate specific reasons for why an impairment does not medically equal a listing, a facial reading of 17-2p also makes clear that for this premise to hold water, within the ALJ's decision there must be "sufficient" rationale from which the Court could determine "the basis for the finding about medical equivalence at step 3." Dkt. No. 13 at 5-6; SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017).

As the ALJ does not explain how imaging studies that appear to show evidence of nerve root compression impacts – or fails to impact – a listing analysis which relies on a conclusion that there is no evidence of nerve root compression, the Court cannot determine that the ALJ's listings analysis at step three is supported by substantial evidence. Where there appears to be record support for all of the listings factors, the

ALJ was required to address that evidence, and an ALJ's failure to specifically address these factors is error sufficient to warrant remand. See Cherico v. Colvin, No. 12 Civ. 5734 (MHD), 2014 WL 3939036, at *28 (S.D.N.Y. Aug. 7, 2014).

Defendant also argues that plaintiff did not meet or medically equal Listing 1.04(A) because physical therapy records "do not indicate the completion of SLR tests in a seated position (Tr. 449, 453) – nor do any other records." Dkt. No. 13 at 2, 10, 10 n.4.  It is true that the two records defendant cites indicate that the SLR tests were performed in a supine position; however, in several other records where positive SLR was noted, it is unclear whether the test was performed in a seated position, supine position, or both.  See T at 287, 432, 463, 494, 498, 502, 506.  Although plaintiff bears the burden of demonstrating that he meets or medical equals Listing 1.04, "the ALJ is required to explain why a claimant failed to meet or equal the Listings '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'" Ramirez Morales v. Berryhill, No. 6:17-CV-06836-MAT, 2019 WL 1076088, at *3 (W.D.N.Y. Mar. 7, 2019) (quoting Rockwood v. Astrue, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (where the plaintiff's straight leg testing results were positive, but it was unclear the position in which the tests were performed, the Court remanded, noting that it was the ALJ's duty to seek clarification where there was ambiguity in the record, especially because "[t]here is at least a colorable case that [the plaintiff] meets the requirements of Listing 1.04(A)"; making "the ambiguity . . . critical to a finding of disability.")).

The Court notes that the ALJ did not base his Listings finding on straight leg raising tests, at least not explicitly.  See T at 13.  Thus, the Court is unable to determine

whether the straight leg raising tests also played any role in his listings analysis. However, even if the Court could infer that the ALJ relied, to some extent, on plaintiff's straight leg raising tests, because it is not clear from all of the medical records whether these tests were performed in the sitting position, supine position, or both, the ALJ had the duty to clarify these records. Despite plaintiff's burden at step three, where, as here, the records show evidence of positive straight leg raising tests but the positions in which those tests occurred is unclear, Courts have held that the ALJ's failure to contact the providers to seek clarification may warrant remand. See Monsoori, 2019 WL 2361486, at *6 (citing Ramirez Morales, 2019 WL 1076088, at *4) ("remanding for proper evaluation of Listing 1.04(A), including re-contacting plaintiff's treating sources to determine the position or positions of straight leg raising tests.")).

The error at step three, as discussed, is a sufficient basis for reversal and remand of the Commissioner's decision. Accordingly, the Court need not fully address Plaintiff's arguments (1) regarding the ALJ's failure to develop the record with a consultative examination or through obtaining medical source statements from plaintiff's treating providers, and (2) that the RFC was unsupported by substantial evidence. See generally Dkt. No. 12.[5]

Accordingly, the matter is remanded to the Commissioner for further proceedings. On remand, the Commissioner shall perform a proper and complete evaluation of the medical evidence as it relates to Listing 1.04(A), including, where necessary, contacting the medical providers to clarify the position(s) in which the

---

[5] Insofar as plaintiff argues that the vocational expert improperly relied on jobs that did not exist in significant numbers in the national economy, although the Court need not reach this issue as it remands based on the Listings analysis, the Court agrees with defendant that the argument was waived as it was not raised before the SSA at the administrative level. See Dkt. No. 13 at 23-24.

15

straight leg raising tests were performed.  If determined necessary, the Commissioner may order a consultative examination to determine if all components of Listing 1.04(A) were met, and, if so, whether they existed simultaneously or are expected to meet the durational requirement.  See Ramirez Morales, 2019 WL 1076088, at *4.

## VI.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's Motion for Judgment on the pleadings (Dkt. No. 12) is **GRANTED**, and it is further

**ORDERED**, that defendant's Motion for Judgment on the pleadings (Dkt. No. 13) is **DENIED**, and the matter is

**REMANDED** to the Commissioner for proceedings consistent with this Memorandum-Decision & Order.

**IT IS SO ORDERED**.

Dated: August 25, 2021
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge